IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIBERTY LIFE INSURANCE COMPANY,        )
                                       )   Civil Action
              Plaintiff                )   No. 09-cv-03069
                                       )
       vs.                             )
                                       )
VERONICA N. FIGUEROA,                  )
  Administratrix of the                )
  Estate of Ernesto Figueroa,          )
  also known as                        )
  Ernesto F. Carrion,                  )
                                       )
              Defendant                )


                        *    *    *


APPEARANCES:

          RICHARD R. GALLI, ESQUIRE
               On behalf of Plaintiff

          RICHARD P. ABRAHAM, ESQUIRE
          GREGORY B. HELLER, ESQUIRE
               On behalf of Defendant


                        *    *    *



                   O P I N I O N

JAMES KNOLL GARDNER,
United States District Judge

          This matter is before the court on the Motion for

Summary Judgment of Plaintiff Liberty Life Insurance Company

filed July 30, 2010, Defendant's Motion for Summary Judgment

filed July 30, 2010, and Defendant's Amended Motion for Summary

Judgment filed August 24, 2010 with leave of court.  For the

following reasons, I grant plaintiff's motion for summary

judgment, and I deny defendant's motion for summary judgment and amended motion for summary judgment. Specifically, I rule that plaintiff Liberty Life Insurance Company is not obligated to pay benefits under an accidental death policy it issued to defendant's decedent.

### JURISDICTION

Jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Specifically, plaintiff Liberty Life Insurance Company is a South Carolina corporation with its principal place of business in South Carolina. Defendant Veronica N. Figueroa, as Administratrix of the estate of decedent Ernesto Figueroa, is a citizen of Pennsylvania. The amount in controversy exceeds $75,000.

### VENUE

Venue is proper because the events giving rise to this action occurred in Lehigh County, Pennsylvania, which is in this judicial district. 28 U.S.C. § 1391.

### PROCEDURAL HISTORY

Plaintiff initiated this action on July 9, 2009 by filing a civil Complaint for Declaratory Judgment in this court. The Complaint seeks a declaration that plaintiff Liberty Life Insurance Company is not obligated to pay benefits under an accidental death policy it issued to defendant's decedent Ernesto Figueroa, also known as Ernesto F. Carrion. On September 4,

2009, defendant Veronica N. Figueroa, as Administratrix of decedent's estate, filed an Answer to the Complaint.

On July 30, 2010, the parties filed cross-motions for summary judgment. Defendant filed a response to plaintiff's motion on August 23, 2010. By Order dated August 24, 2010, I granted defendant's unopposed request to file an amended motion for summary judgment for the limited purpose of listing, in numbered paragraphs, the material facts about which defendant contends there is no genuine issue, and I directed the Clerk of Court to file defendant's proposed amended motion. That amended motion now appears on the docket as Defendant's Amended Motion for Summary Judgment, at Docket Entry 27.

On August 25, 2010, I heard oral argument on the cross-motions for summary judgment, and took the matter under advisement. Hence this Opinion.

<u>STANDARD OF REVIEW</u>

In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). <u>See also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509-2510, 91 L.Ed.2d 202, 211 (1986); <u>Federal Home Loan Mortgage</u>

Corporation v. Scottsdale Insurance Company, 316 F.3d 431, 443 (3d Cir. 2003). Only facts that may affect the outcome of a case are "material". In making this determination, the "evidence of the non-movant is to be believed" and all reasonable inferences from the record are drawn in favor of the non-movant. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513, 91 L.Ed.2d at 216.

Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See Watson v. Eastman Kodak Company, 235 F.3d 851, 857-858 (3d Cir. 2000). The non-moving party cannot avert summary judgment with speculation or by resting on the allegations in its pleadings, but rather it must present competent evidence from which a jury could reasonably find in their favor. Ridgewood Board of Education v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Woods v. Bentsen, 889 F.Supp. 179, 184 (E.D.Pa. 1995).

FACTS

Based upon the pleadings, record papers, exhibits, and each party's statement of undisputed facts, the pertinent undisputed facts for purposes of the cross-motions for summary judgment are as follows.

Defendant Veronica N. Figueroa is the Administratrix of the estate of Ernesto Figueroa, also known as Ernesto F. Carrion.

-4-

She is the daughter of Ernesto Figueroa. Mr. Figueroa and Margarita Carrion were joint insureds under a group decreasing term accidental death insurance policy issued by Liberty Life Insurance Company of Greenville, South Carolina. The coverage became effective on December 1, 1998 and covered the amount of the balance of the insured's mortgage loan as of the time of death in the event of a covered accidental death.

Mr. Figueroa and Margarita Carrion were the borrower and co-borrower, respectively. On the date of the application, November 1, 1998, the mortgage loan balance and the initial amount of insurance were $107,068.45.

On January 30, 2008, Mr. Figueroa died at Lehigh Valley Hospital. He had been a patient at the hospital from his arrival at the Emergency Department at 8:32 p.m. on January 29, 2008 until his death on January 30, 2008 at 7:37 a.m.

The medical records of Lehigh Valley Hospital provide a record of Mr. Figueroa's complaints, his medical care and the chronology of events from his arrival at the hospital until his death. The intake form signed by Mr. Figueroa described the reason for his presence as "stabbing pain in the stomach, severe stomach problems, vomiting consisting [sic] for the past two days."[1] The hospital records state that Mr. Figueroa's chief complaint was abdominal pain.

---

[1]     Motion for Summary Judgment of Plaintiff Liberty Life Insurance Company filed July 30, 3010 ("Plaintiff's motion"), at Bates number LL0120.

The physician who examined Mr. Figueroa's abdomen, Dr. Conroy, noted "Mild tenderness diffusely. No guarding, rebound tenderness or Murphy's sign present. Abdomen soft."[2] A second doctor, Dr. Frei,[3] agreed with Dr. Conroy's assessment and noted that he intended to do a CT scan.[4]

Dr. Conroy was present at 6:20 a.m. for the administration of an IV injection of contrast dye. About 70 seconds into the injection, Mr. Figueroa started to get very nauseous and began vomiting, developed erythema, and stated he was itchy. He then began to seize. Dr. Frei was called, and found Mr. Figueroa vomiting, awakened slightly; and he appeared red, and his tongue appeared swollen. Mr. Figueroa was returned to the emergency department, where fluids and epinephrine were administered for apparent anaphylaxis.

Mr. Figueroa developed ventricular fibrillation, and did not respond to medication or repeated attempts at defibrillation. He died at 7:37 a.m. Dr. Frei's notes include his clinical impression of abdominal pain and "[c]ardiac arrest due to anaphylactoid reaction to radiographic dye."[5]

---

[2]    Plaintiff's motion, LL0147.

[3]    Plaintiff's motion refers to this doctor as Dr. Steven Friel, M.D. According to the hospital records attached to the motion, his name is Steven Frei, M.D.

[4]    Plaintiff's motion, LL0147.

[5]    Plaintiff's motion, LL0144.

An autopsy was performed on January 30, 2008 by S. Land, M.D., of Forensic Pathology Associates, Inc. According to Dr. Land's autopsy report, the cause of death was acute anaphylaxis following intravenous dye administration. It also included, inter alia, a pathologic diagnosis of the gastro-intestinal system which included "diverticula, multiple, of colon".[6]

On January 31, 2008, a Coroner's Certificate of Death was signed by the Chief Deputy Coroner of Lehigh County, Paul R. Zondlo. The certificate listed the immediate cause of death as "pending investigation".[7] The Deputy Coroner, Jason Nicholas, conducted an investigation and created a report, reviewing decedent's medical records and speaking to Ms. Carrion with the assistance of Veronica Figueroa as interpreter. Deputy Coroner Nicholas reported that Ms. Carrion advised that decedent had no known allergy to radiographic dye and that he had CT scans in the past at St. Luke's Hospital "and did not have any type of reaction."[8]

On February 7, 2008, decedent's wife, Margarita Carrion, submitted to plaintiff Liberty Life a "Claimant's Statement for Accidental Death Benefit", signed by her, which

---

[6]     Plaintiff's motion, LL0082.

[7]     Plaintiff's motion, LL0068.

[8]     Plaintiff's motion, LL0077-LL0080.

stated that the cause of death was "unknown pending autopsy report."  The claim stated that there was "no injury involved" and briefly described "Deceased complain[ed] of stomach pain taken to hospital sitting for 4 hours then to Lehigh Valley Hospital then was given Morphine and dye for iodine CT Scan. Began to throw up - then stopped breathing."[9]

On May 12, 2008, a supplemental coroner's report was issued by Deputy Coroner Nicholas which reported a review of the completed autopsy report "and other investigative material".  The determination of the cause of death was "Acute Anaphylaxis following Intravenous Dye Administration" and the manner of death was "accident".[10]

By letter dated May 15, 2008, the Claims Service Center of Liberty Life Insurance Company advised Ms. Carrion that an original death certificate showing the cause of death was needed before the claim could be processed.  On May 20, 2008, a second Coroner's Certificate of Death was issued for Ernesto Figueroa, signed by the Chief Deputy Coroner.  It listed "Acute Anaphylaxis following Intravenous Dye Administration" as the immediate cause of death and had the box "Accident" checked for manner of death.[11]

---

[9]    Plaintiff's motion, paragraph 11(g)(38-40).

[10]   Plaintiff's motion, paragraph 11(g)(42-45); LL0081.

[11]   Plaintiff's motion, paragraph 11(g)(46-48).

By letter dated May 21, 2008, Ms. Carrion wrote to Liberty Life Insurance Company with the May 20, 2008 death certificate. By letter dated May 30, 2008, the Claims Service Center advised Ms. Carrion that the claim had been reviewed and that accidental death benefits were not payable and that the policy "does not cover death which results directly or indirectly, in whole or in part, from disease, illness or infirmity of the body or mind."[12]

By letter dated June 16, 2008, counsel for decedent notified the Claims Service Center of the representation and "represented that the accidental death is 'clearly covered under the policy' because the 'physician-administered intravenous dye administration essentially triggered an entire body allergic reaction resulting in death and section (f) in the 'Risks Not Covered' portion of the policy covers death which results while under the influence of drugs if they were 'administered on the advice of a physician'". By letter dated November 7, 2008, counsel for Liberty Life Insurance Company advised counsel for the estate that the Claims Department was "sticking by its original decision - 'to deny this claim'."[13]

---

[12]    Plaintiff's motion, paragraph 11(g)(49-51).

[13]    Plaintiff's motion, paragraph 11(g)(52-53).

## Contentions of Plaintiff

Plaintiff Liberty Life Insurance contends that Mr. Figueroa's death is not covered by the policy because the policy contains an exclusion for death resulting from disease, illness or infirmity; and because his death was not the result of an accidental bodily injury.

First, plaintiff contends that Mr. Figueroa's abdominal condition was an illness leading to the diagnostic procedure which resulted in his death. Thus, plaintiff contends that the illness was the "triggering event" in the chain of events leading to death, and therefore the death is excluded from coverage.

Second, plaintiff contends that the death was not accidental because the dye administration was planned; allergic assessment and warnings were done; and the mechanism of death was not an accidental process. It asserts that Mr. Figueroa's death, while unexpected, was not unforeseeable or a matter of chance. Plaintiff avers that the fact that Mr. Figueroa was warned about the possibility of allergic reaction demonstrates that such a reaction was foreseeable and, therefore, not an accident as defined in Pennsylvania.

Moreover, plaintiff avers that the coroner's determination that the cause of death was "Accident" is not

binding for purposes of this lawsuit but is merely used for statistical purposes.

Defendant's Contentions

Defendant Veronica Figueroa, as Administratrix of Mr. Figueroa's estate, contends that the estate is entitled to coverage under the policy because Mr. Figueroa's death was a direct result of anaphylactic reaction to intravenous contrast dye and was accidental.  In support of this averment, defendant contends that the Superior Court of Pennsylvania has held that death resulting from an anaphylactic dye reaction is an accident.

Second, defendant contends that plaintiff's "root cause" argument (the idea that there is no coverage if Liberty Life can identify a "root cause" that is non-accidental) does not appear anywhere in the policy.  Defendant avers that the policy actually provides for the opposite, by promising to provide coverage for an accidental death that is the "direct and sole result of accidental bodily injury".  Defendant asserts that this focus on direct causes is inconsistent with plaintiff's search for a more remote cause.

Third, defendant argues that the policy expressly includes coverage for deaths caused by medication prescribed by a physician, but does not include deaths caused by a medication not prescribed by a physician.  She argues that plaintiff's interpretation would render this policy language superfluous.

Finally, defendant argues that it would be unsound policy to endorse plaintiff's approach and would invite insurance companies to search back in the causal chain for non-accidental causes, thereby creating extensive litigation.

DISCUSSION

The parties agree that the direct cause of Mr. Figueroa's death was anaphylactic reaction to radiographic contrast dye. At issue is whether, under the terms of the policy, plaintiff is required to pay death benefits. The parties do not dispute that Pennsylvania substantive law applies in this diversity action. See Erie Railroad Company v. Tompkins, 304 U.S. 64, 589 S.Ct. 817, 82 L.Ed. 1188 (1938).

The interpretation of an insurance policy is a question of law properly decided by the court. Medical Protective Company v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999). Any ambiguity is construed strictly against the insurer. Selko v. Home Insurance Company, 139 F.3d 146, 152 n.3 (3d Cir. 1998). However, the general rule in Pennsylvania is that "courts are required to give effect to the language of contracts, including insurance policies, if that language is clear and unambiguous." Tran v. Metropolitan Life Insurance Company, 408 F.3d 130, 136 (3d Cir. 2005).[14]

---

[14] However, in certain situations, "the insured's reasonable expectations will be allowed to defeat the express language of an insurance

(Footnote 14 continued):

Courts should not "torture the language" to create ambiguities, but should read policy provisions to avoid it. Selko, 139 F.3d at 152 n.3 (internal citation omitted).  A term is considered ambiguous "only if reasonably intelligent men, on considering it in the context of the entire policy, would honestly differ as to its meaning."  State Farm Fire & Casualty Company v. Bellina, 264 F.Supp.2d 198, 202 (E.D.Pa. 2003)(Kelly, Robert F., S.J.).  Words of common usage in an insurance policy must be construed in their "natural, plain and ordinary sense".  McCrink v. Peoples Benefit Life Insurance Company, 2005 WL 730688, at *6 (E.D.Pa. March 29, 2005)(Davis, J.).

In the context of insurance litigation, the insured has the initial burden to establish coverage under an insurance policy.  On the other hand, when the insurer relies on a policy exclusion as the basis for denying coverage, it bears the burden of proving that the exclusion applies.  Continental Casualty Company v. County of Chester, 244 F.Supp.2d 403, 407 (E.D.Pa. 2003)(Savage, J.).  "The insurer can sustain its burden only by

(Continuation of footnote 14):

policy."  Id. (quoting Bensalem Township v. International Surplus Lines Insurance Company, 38 F.3d 1303, 1309)(3d Cir. 1994)).  The Bensalem Township court noted that one theme that has emerged from decisions of the Supreme Court of Pennsylvania on the doctrine of reasonable expectations is that "courts are to be chary about allowing insurance companies to abuse their position vis-a-vis their customers.  Thus we are confident that where the insurer or its agent creates in the insured a reasonable expectation of coverage that is not supported by the terms of the policy[,] that expectation will prevail over the language of the policy."  Tran, 408 F.3d at 136 (citing Bensalem Township, 38 F.3d at 1311).

establishing the exclusion's applicability by uncontradicted facts in the record.  Policy exclusions are strictly construed against the insurer."  <u>Id.</u> (internal citations omitted).

In this case, plaintiff relies, in part, on a policy exclusion as its basis for denying coverage.  The parties agree that the policy provides, in relevant part:

> **Accidental Death Benefit –** We will pay the Accidental Death Benefit...on receipt of due proof that death occurred: (a) while this benefit was in force; (b) as the direct and sole result of accidental bodily injury, and (c) within 90 days from the date of the injury.
>
> ....
>
> **Risks Not Covered -** This Policy does not cover death which results directly or indirectly, in whole or in part, from: (a) disease, illness or infirmity of the body or mind;...or (f) drugs (including but not limited to narcotics, hypnotics, and ampthetamines), unless administered on the advice of a physician, or poisons voluntarily taken, administered, absorbed, inhaled or injected.

Policy, page 3.[15]

Plaintiff contends that it is not required to pay benefits under the policy for two reasons.  First, plaintiff avers that Mr. Figueroa's death was not the result of "accidental bodily injury", because the dye administration was planned,

---

[15]    The policy is attached to plaintiff's motion as part of Exhibit F (1.A), beginning at Bates number LL0005.  The identical relevant language also appears in the Application for Group Mortgage Protection Accidental Death Insurance Plan, which is attached to defendant's amended motion as Exhibit A. The parties do not dispute that these are the provisions of the policy which are at issue.

-14-

allergic assessment and warnings were given, and thus the death was a foreseeable complication of medical treatment, not an accidental bodily injury.

Second, plaintiff contends that the "disease, illness or infirmity" exclusion applies to bar coverage because Mr. Figueroa's abdominal condition was the "triggering event" in the chain of events leading to the diagnostic procedure which resulted in his death.

Because I agree with plaintiff that the death was not the result of "accidental bodily injury" and is therefore not a covered event under the policy, I do not address its exclusion argument.

<u>Accidental Bodily Injury</u>

As Administratrix of the estate for the insured, defendant bears the initial burden of establishing coverage under the policy.  <u>See</u> <u>Continental Casualty Company</u>, 244 F.Supp.2d at 407.  Here, defendant contends that Mr. Figueroa's death is covered under the plain language of the policy because the coroner determined that the cause of death was an accident. Additionally, defendant contends that the Superior Court of Pennsylvania has held that a death resulting from an anaphylactic dye reaction is an accident.

In support of this contention, defendant relies on <u>Gyulai v. Prudential Insurance Company</u>, 135 Pa.Super. 73,

4 A.2d 824 (1939).  In <u>Gyulai</u>, decedent-insured was struck on the head by a falling board, was treated with an anti-tetanus serum, and died of renal failure caused by an anaphylactic reaction to the serum.  <u>Id.</u>

The <u>Gyulai</u> court concluded that the death was covered by the policy at issue, which required that the death result from sustaining bodily injury through "external, violent and accidental means" and not attributable to any "disease or bodily infirmity".  <u>Gyulai</u>, 135 Pa.Super. at 77, 4 A.2d at 825.  In so determining, the court noted that the "chain of events" began with an accidental blow to decedent's head, and affirmed the trial court's determination that the death was caused by an accident, even assuming that the insured's death would not have resulted from the original injury if he had not been hypersensitive to the serum.  <u>Gyulai</u>, 135 Pa.Super. at 78, 82, 4 A.2d at 825, 827.

Here, defendant relies on the Superior Court's decision in <u>Gyulai</u> for the proposition that death from an anaphylactic reaction to medical treatment is "accidental" under Pennsylvania law.  The parties have not cited, and I am not aware of, any decision of the Supreme Court of Pennsylvania on this issue.

Where the Supreme Court of Pennsylvania has not addressed a precise issue, "the opinions of intermediate state courts are 'not to be disregarded by a federal court unless it is

convinced by other persuasive data that the highest court in the state would decide otherwise.'" Nationwide Mutual Insurance Company v. Buffetta, 230 F.3d at 637 (citing West v. American Telephone and Telegraph Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940)).

Thus, to the extent the Superior Court's decision in Gyulai could be construed as addressing the precise issue at hand, it would be binding on this court unless other persuasive data indicates that the Supreme Court would decide otherwise. However, I conclude that Gyulai is not factually analogous to this case, and therefore it is not controlling.

Specifically, the Superior Court in Gyulai addressed anaphylactic reaction in the context of an accidental injury (i.e., the Gyulai decedent was treated for an accidental blow to the head). As noted above, the Superior Court in Gyulai concluded that decedent's death was linked, through the "chain of events", to the accident for which he sought treatment. Gyulai, 135 Pa.Super. at 82, 4 A.2d at 827.

Contrary to defendant's characterization, Gyulai does not hold that death from anaphylaxis is necessarily accidental. Rather, it holds that the trial court reasonably concluded that an accidental blow to the head was the cause of the insured's death for purposes of the accidental-death policy at issue, even

though the final link in the "chain of events" was sensitivity to treatment for the accidental blow.  Id.

Here, unlike in Gyulai, the ailment for which Mr. Figueroa sought treatment (i.e., stomach pain) is not characterized by the parties, nor can it be, as an "accident". Rather, the issue is whether decedent's reaction to the treatment itself is an accident.  Because the case at bar is factually distinguishable from Gyulai, and because Gyulai does not stand for a blanket proposition that any death from anaphylaxis is necessarily accidental, I do not consider Gyulai to be controlling authority for that proposition.

Defendant further contends that Mr. Figueroa's death was "accidental" for purposes of the policy based on the plain meaning of the term "accidental bodily injury", which is not defined by the policy.  Moreover, defendant avers that the insured reasonably expected coverage in this case, because the coroner determined that the death was accidental.

To the extent the term "accidental bodily injury" is clear and unambiguous, I am required to give effect to the language.  Tran, 408 F.3d at 136.  Moreover, as noted above, words of common usage in an insurance policy must be construed in their "natural, plain and ordinary sense".  McCrink, 2005 WL 730688, at *6.

Regarding the definition of "accident", the Third Circuit Court of Appeals notes that the Pennsylvania Supreme Court has emphasized that

> [T]he fortuity of the events in question is the key factor to consider in making that determination: "An accident, simply stated, is merely an unanticipated event; it is something which occurs not as the result of natural routine but as the culmination of forces working without design, coordination or plan. And the more disorganized the forces, the more confusedly they operate, the more indiscriminately haphazard the clash and intermingling, the more perfect is the resulting accident."

State Farm Fire & Casualty Company v. Estate of Mehlman, 589 F.3d 105, 111, (3d Cir. 2009)(quoting Brenneman v. St. Paul Fire & Marine Insurance Company, 411 Pa. 409, 413, 192 A.2d 745, 747 (1963)).

The Mehlman court went on to note that "qualification of a particular incident as an accident seems to depend on two criteria: 1. the degree of foreseeability, and 2. the state of mind of the actor in intending or not intending the result." Mehlman, 589 F.3d at 111 (quoting Black's Law Dictionary 16 (9th ed. 2009)).

Here, plaintiff-insurer contends that although Mr. Figueroa's death was unexpected, it was not unforeseeable or a matter of chance. Rather, plaintiff asserts that the risk of anaphylactoid reaction to contrast dye is foreseeable generally, and in Mr. Figueroa's case specifically, as evidenced by the

undisputed fact that according to hospital records, Mr. Figueroa was given an allergy warning prior to the administration of the contrast dye.

In further support of this assertion, plaintiff relies on the report of its expert, John R. Cohn, M.D., who opined that "Recent data suggest that death from anaphylactoid radiographic contrast reactions are uncommon. Fatality rates as low as one death in 168,000 contrast administrations have been described."[16] Dr. Cohn also opined that "death from radiographic contrast reactions is increasingly uncommon."[17]

Based on Dr. Cohn's report, plaintiff avers that Mr. Figueroa's death was foreseeable, it was not "accidental", and therefore it is not a covered event under the terms of the policy. Specifically, plaintiff suggests that Dr. Cohn's report represents that reaction to contrast dye is a recognized complication, and argues that the possibility of a reaction is so well known that Mr. Figueroa was warned.

Defendant proffers no evidence which refutes Dr. Cohn's opinions, but relies on the report of Lehigh County Deputy Coroner Jason Nicholas, who concluded that the cause of death was anaphylaxis, and that the "manner of death is accident".[18]

---

[16] Plaintiff's motion, Exhibit L (Report of John R. Cohn, M.D.) ("Cohn report"), at page 3.

[17] Cohn report, at page 2.

[18] Defendant's motion, Exhibit B.

However, defendant cites no authority for the proposition that the coroner's determination of the "manner of death" is relevant or dispositive here.[19]

The parties are in agreement that Mr. Figueroa's death was unexpected, and clearly the result was unintentional. Moreover, plaintiff-insurer's expert opined that death from anaphylactic reaction to contrast dye is "increasingly uncommon." Nevertheless, I cannot conclude that it was unforeseeable, particularly in light of the undisputed hospital records indicating that Mr. Figueroa was given an allergy warning prior to injection of the dye. See Mehlman, 589 F.3d at 111. Accordingly, I conclude that defendant has not met its initial burden of establishing that Mr. Figueroa's death was an

---

[19]    Plaintiff avers that under Third Circuit precedent, a coroner's determination in this regard is not legally binding, but rather is used for statistical purposes and to guide prosecutors.  Pollard v. Metropolitan Life Insurance Company, 598 F.2d 1284 (3d Cir. 1979).  In relevant part, Pollard addressed, in the context of a motion for new trial and to overturn a jury verdict, the trial court's evidentiary ruling precluding admission of a coroner's report.

A review of Pollard indicates that the appellate court's observations regarding the coroner's report were based on record facts before the district court in assessing the probative value of the report.  Accordingly, I do not consider it a broad holding that a coroner's determination of the "manner of death" could not be relevant.

Nonetheless, because defendant bears the initial burden of establishing that decedent's death is a covered event under the policy, and because defendant provides no legal authority other than Pollard in support of her position that the coroner's determination of the "manner of death" is relevant for purposes of this action, I cannot conclude that such determination is probative.  See Continental Casualty, 244 F.Supp.2d at 407, which notes that the insured bears the initial burden of establishing coverage; see also E.D.Pa.R.Civ.P. 7.1(c).

"accidental bodily injury" under the plain language of the policy.

Because I conclude that the death at issue is not a covered event under the policy, I grant plaintiff's motion for summary judgment, I deny defendant's motion for summary judgment and amended motion for summary judgment, and I do not address plaintiff's alternative argument that coverage is barred by an exclusion.

<u>CONCLUSION</u>

For all the foregoing reasons, I grant the Motion for Summary Judgment of Plaintiff Liberty Life Insurance Company, and I deny Defendant's Motion for Summary Judgment and Defendant's Amended Motion for Summary Judgment.  Moreover, I enter judgment in favor of plaintiff Liberty Life Insurance Company and against Veronica N. Figueroa, Administratrix of the Estate of Ernesto Figueroa, also known as Ernesto F. Carrion.

As a result, plaintiff Liberty Life Insurance Company is not obligated to pay benefits under the accidental death policy it issued to defendant's decedent Ernesto Figueroa, also known as Ernesto F. Carrion.